PCampana\Tetrault\PleAgr.wpd

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK



**FILED**

APR 1 0 2007

CLERK, US DISTRICT COURT, WDNY

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| -v- | : |
| JAMES TETRAULT, | : |
| Defendant. | : |

07-CR-

07  CR&085

## PLEA AGREEMENT

The defendant,  JAMES TETRAULT, and the United States Attorney
for the Western District of New York (hereinafter "the government")
hereby enter into a plea agreement with the terms and conditions as
set out below.


### I.   **THE PLEA AND POSSIBLE SENTENCE**


1.   The defendant agrees to waive indictment and plead guilty
to a one-count Information charging a violation of Title 18, United
States Code, Section 1341, (mail fraud), for which the maximum
sentence is a term of imprisonment of 20 years, a fine of $250,000,
a mandatory $100 special assessment, and a term of supervised
release of up to three years.   The defendant understands that the
penalties set forth in this paragraph are the maximum penalties
that can be imposed by the Court at sentencing.

PCampana\Tetrault\PleAgr.wpd

2.    The defendant understands that if it is determined that he has violated any of the terms or conditions of supervised release, he may be required to serve in prison all or part of the term of supervised release, up to two years, without credit for time previously served on supervised release.   Therefore, if the defendant is sentenced to the maximum term of incarceration, a prison term imposed for a violation of supervised release may result in the defendant serving combined sentences of imprisonment longer than the statutory maximum set forth in paragraph 1 of this agreement.

3.    The defendant understands that the Court must require restitution as part of the sentence pursuant to Section 5E1.1 of the Sentencing Guidelines and Title 18, United States Code, Section 3663A.   The defendant agrees that the restitution will be payable to persons who invested money in companies operated by the defendant, and that the amount will be not less than $2.5 million.

## II.    SENTENCING GUIDELINES

4.    The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines.

-2-

PCampana\Tetrault\PleAgr.wpd

## **ELEMENTS OF THE CRIME**

5.    The defendant understands the nature of the offense set forth in paragraph 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crime: (a) having knowingly devised a scheme to obtain money by false pretenses and representations; b) the defendant caused the U.S. Mail to be used in furtherance of the scheme.

## **FACTUAL BASIS**

6.    The defendant and the government agree to the following facts, which form the basis for the entry of the guilty plea, including relevant conduct:

> During a period including from in or about March 2001 to in or about 2006, the defendant invested money in various entities operated by Robert Logel. These investments were influenced by representations made to the defendant by Mr. Logel.  As these investments failed, the defendant attempted to raise money, as described below, to repay prior investors with funds received from persons who invested money with the defendant later.

### **Interim Capital, LLC.**

**a.** The defendant, James Tetrault, operated a money management company called Interim Capital, LLC. ("Interim Capital")  The defendant established Interim Capital in or about March 2001.  A money management firm is a fund of money obtained from investors, which is pooled and then invested in the stock market.  Interim Capital did

-3-

PCampana\Tetrault\PleAgr.wpd

business at 8420 Main Street in Williamsville, New York.
Later, the defendant moved the business to his residence
at 170 Deer Run in Williamsville, New York.

**b.** Doing business as Interim Capital, the defendant
raised money from investors, who would either be issued
promissory notes or investment management agreements.

**c.** From time to time the defendant obtained money from
investors and invested their funds through Robert Logel
in investments that did not return a profit. Although
those investments did not return a profit, the defendant
sent account statements to investors which the defendant
knew did not truly and accurately set forth the status of
the investments. These statements were sent to the
investors by the defendant from the Western District of
New York by means of the United States mail.

**d.** The aforementioned statements that were mailed to the
investors were sent on a quarterly basis. These
statements purported to set forth the status of the
investors' accounts for that quarter, including the
amount of growth, the amount of the management fees
deducted from the investors' accounts, and the
performance fee. The management fee charged by the
defendant was 2.25% annually, based upon the total amount
of money in the investor's account. The performance fee
was 20% of any gains made on any investment during the
quarter.

**e.** In fact, however, in the case of many investors, the
investments did <u>not</u> earn the stated profits, and the
information provided by the defendant to the investors
regarding profits purportedly earned by their investments
was false. The defendant used a model on the basis of
which he computed profits that were <u>not</u> actually earned
but which the defendant falsely indicated <u>were</u> earned in
order to make the investors believe their funds were
earning profits when in fact they were not.

**f.** As a result of receiving their quarterly statements,
the investors believed that their investments had grown
in accordance with the information set forth in the
statements and that the money in their accounts was
available for withdrawal, when in fact their investments

-4-

Case 1:07-cr-00085-WMS   Document 3   Filed 04/10/07   Page 5 of 21

PCampana\Tetrault\PleAgr.wpd

had not grown and the funds were not available for withdrawal.

**g.** From time to time investors would advise the defendant that they wanted to make substantial withdrawals from their accounts, believing their funds were available. To make such withdrawals when such requests were made, the defendant would resort to raising money from other investors in order to obtain the funds for prior investors who wished to make withdrawals.

## Ocean Trading Partners, LLC.

**h.** In 2002 the defendant established another money management firm, which he called Ocean Trading Partners, LLC. ("Ocean Trading Partners"). This company did business at 8420 Main St in Williamsville, New York, and later at the defendant's residence at 170 Deer Run in Williamsville, New York.

**i.** In 2002 an investor named Virendra Gupta was issued a promissory note by Spaulding Ventures in the amount of $150,000. Spalding Ventures was an investment company owned by Robert Logel. Both the defendant and Robert Logel signed the promissory note, which guaranteed that the funds would be returned to Mr. Gupta when the note fell due. This promissory note later went into default status due to nonpayment. Gupta commenced a legal action against Spaulding Ventures and the defendant seeking to recover the $150,000. In order to repay Mr. Gupta, the defendant raised money by seeking investments from other investors.

**j.** The defendant issued quarterly statements to investors he recruited for Ocean Trading Partners. On the statements he issued to the investors in Ocean Trading Partners, the defendant falsely indicated that the investors were earning the stated profits on the investments when, in fact, this was not the case.

**k.** Instead, the defendant used the investors' funds in part for personal expenses and in part to repay investors in Interim Capital, whose funds were, unbeknownst to

PCampana\Tetrault\PleAgr.wpd

them, invested with Robert Logel and Logel's company, Spaulding Ventures.

### Blackshoe, LLC.

1.   In 2005 the defendant established a company called Blackshoe, LLC. ("Blackshoe").  Operating as Blackshoe, the defendant raised money from investors by issuing promissory notes.  Using the money he obtained in this fashion, the defendant repaid investors and note holders who had invested money with the defendant through Interim Capital and Ocean Trading Partners.  Also, the defendant, with money raised while doing business as Blackshoe, repaid Blackshoe promissory note holders with funds derived from other Blackshoe promissory notes issued later.

### Loss To investors

m.   For purposes of determining the guideline offense level, the losses incurred by investors in Interim Capital, Ocean Trading Partners, and Blackshoe exceeded $1 million, but did not exceed $2.5 million.

### BASE OFFENSE LEVEL

7.   The government and the defendant agree that Guidelines §2B1.1(a)(1) applies to the offense of conviction and prescribes a base offense level of 7.

### SPECIFIC OFFENSE CHARACTERISTICS

### USSG CHAPTER 2 ADJUSTMENTS

8.   The government and the defendant agree that the offense level will be increased by 16 levels pursuant to Guideline Section

PCampana\Tetrault\PleAgr.wpd

2B1.1(b)(1)(I) on account of a loss of more than $1,000,000 but less than $2.5 million.

9.   The government and the defendant agree that the offense level will be adjusted upwards by two levels pursuant to Guideline Section 2B1.1(b)(2)(A)(i) because the offense involved more than ten victims.

### ADJUSTED OFFENSE LEVEL

10.   Based on the foregoing, it is the understanding of the government and the defendant that the adjusted offense level for the offense of conviction is 25.

### ACCEPTANCE OF RESPONSIBILITY

11.   The government agrees not to oppose the recommendation that the Court apply the two-level downward adjustment prescribed by Guidelines §3E1.1(a) (acceptance of responsibility) and further agrees to move the Court to apply the additional one-level downward adjustment pursuant to Guidelines §3E1.1(b), which would result in a total offense level of 22.

PCampana\Tetrault\PleAgr.wpd

## CRIMINAL HISTORY CATEGORY

12. It is the understanding of the government and the defendant that the defendant's criminal history category is Category I. The defendant understands that he has no right to withdraw his guilty plea on account of the Court's determination of his criminal history category.

## GUIDELINES' APPLICATION, CALCULATIONS AND IMPACT

13. It is the understanding of the government and the defendant that, with a total offense level of 22 and Criminal History Category of I, the defendant's sentencing range would be a term of imprisonment of 41 to 51 months, a fine of $7,500 to $75,000, and a period of supervised release of two to three years. Notwithstanding this, the defendant understands that at sentencing he is subject to the maximum penalties set forth in paragraph 1 of this agreement.

14. Subject to Section VI of this agreement concerning Cooperation, the government and the defendant agree to recommend that the defendant be sentenced within the Sentencing Guidelines range set forth above. A breach of this paragraph by one party

PCampana\Tetrault\PleAgr.wpd

will relieve the other party of any agreements made in this plea agreement with respect to sentencing motions and recommendations.

### III.   **STATUTE OF LIMITATIONS**

15.   If the defendant's guilty plea is withdrawn or his conviction is vacated as a result of appeal, motion, post-conviction proceeding, collateral attack, or otherwise, the defendant agrees that any charges dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government, and the defendant further agrees not to assert the statute of limitations as a defense to any other criminal offense involving or related to the facts set forth in Section II of this agreement that is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty plea or vacating of the conviction becomes final.

### IV.   **GOVERNMENT RIGHTS AND RESERVATIONS**

16.   The defendant understands that the government has reserved the right to:

>           a.   provide to the Probation Office and the
>      Court all the information and evidence in its
>      possession that the government deems relevant
>      concerning the defendant's background,

PCampana\Tetrault\PleAgr.wpd

character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

b.   respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government; and

c.   modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information regarding the recommendation or factor.

## Waiver of Right to Post Conviction
## DNA Testing of Physical Evidence

17.   The defendant understands that, pursuant to Title 18, United States Code, Section 3600, he may have the right to request DNA testing of evidence in the possession of the government.   As a condition of this agreement, the defendant voluntary waives, for all purposes, any right to request DNA testing of any such evidence.

## V.   APPEAL RIGHTS

18.   The defendant understands that Title 18, United States Code, Section 3742, affords a defendant a limited right to appeal the sentence imposed.   The defendant, however, knowingly waives the

FCampana\Tetrault\PleAgr.wpd

right to appeal, modify pursuant to Title 18, United States Code, Section 3582(c)(2) and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section II of this agreement.

19.    The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law that the defendant believes would justify a decrease in his sentence.

20.    The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than the sentencing range for imprisonment, a fine and supervised release set forth in Section II above, regardless of how the Court determines the sentence.  However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

-11-

## VI.   COOPERATION

21.   The defendant will cooperate with the government by providing complete and truthful information regarding the defendant's knowledge of any and all criminal activity, whether undertaken by the defendant or others, including conduct related to the facts set forth in the Factual Basis in Section II of this plea agreement.   The defendant's cooperation shall also include submitting to interviews by government attorneys and agents, as well as testifying truthfully and completely before grand juries and at such pre-trial and trial proceedings as the government shall deem necessary.

22.   The defendant's cooperation shall also be provided to any local, state or federal authorities designated by the government and who have agreed to abide by the terms of the "Cooperation" section of this agreement.   The defendant's obligation to testify truthfully and completely shall extend to proceedings in federal, state and local courts in jurisdictions which have agreed to abide by this agreement.

23.   In exchange for the defendant's plea of guilty and cooperation as set forth in this agreement, the defendant will not

PCampana\Tetrault\PleAgr.wpd

be prosecuted by the Office of the United States Attorney for the Western District of New York for any other federal criminal offenses committed in the Western District of New York in any way involving or related to the facts set forth in the Factual Basis in Section II of this plea agreement committed up to the date of this agreement and about which the defendant provides complete and truthful information.

24.    Further, no testimony, statements or tangible objects provided by the defendant in compliance with this agreement (or any information directly or indirectly derived therefrom) will be used against the defendant in any criminal case, except a prosecution for perjury or making false statements.

25.    Upon condition that the defendant has fully complied with all terms and conditions of this agreement, should the government determine that the defendant has provided substantial assistance in the investigation or prosecution of other persons who have committed offenses, the government will move the Court at sentencing to depart downward from the Guidelines as provided for in Guidelines § 5K1.1.  The defendant understands that the decision to make such a motion is within the sole discretion of the government and that the decision to grant such a motion, and the

PCampana\Tetrault\PleAgr.wpd

extent of any downward departure, are matters solely within the
discretion of the Court.

26.  This agreement does not preclude the prosecution of the
defendant for perjury or making false statements in the event the
defendant testifies falsely or provides false information to the
government.  This agreement is not contingent upon the filing of
charges against, the return of an Indictment against, or the
successful prosecution of, any person or entity.

27.  It is a condition of this agreement that, up through the
date of the defendant's sentencing, the defendant shall commit no
further crimes.  It is also a condition of this agreement that the
defendant must, at all times, give complete, truthful and accurate
information and testimony and not withhold information from the
government or refuse to testify truthfully and completely.  Should
the defendant be sentenced prior to the completion of the
defendant's cooperation with the government, the defendant's
obligation to comply with the cooperation provisions of this
agreement extends past sentencing.

PCampana\Tetrault\PleAgr.wpd

28.   In the event the government believes the defendant has violated any of the conditions in the "Cooperation" section of this agreement, then the government may, before or after sentencing, petition the Court to declare that the defendant has breached this agreement and for an order relieving the government of its obligations under this agreement.

29.   Whether or not the defendant has violated any of the conditions of this agreement shall be determined by the Court in an appropriate proceeding at which any disclosures and documents provided by the defendant shall be admissible and at which the government shall be required to establish any violation by a preponderance of the evidence.  In order to establish any violation by the defendant, the government is entitled to rely on statements and information given by the defendant pursuant to this agreement.

30.   If this agreement is declared breached:

a.    the defendant shall thereafter be subject to prosecution for any federal criminal violations of which the government has knowledge, including but not limited to, perjury and obstruction of justice;

b.    the government may withdraw any motion filed pursuant to Sentencing Guidelines §5K1.1, Title 18, United States Code, Section 3553(e) and/or Rule 35(b);

PCampana\Tetrault\PleAgr.wpd

c.     the defendant has no right to withdraw the plea of guilty;

d.     the defendant shall waive all rights under Fed. R. Crim. P. 11(f), Fed. R. Evid. 410 and Sentencing Guidelines § 1B1.8 and the defendant expressly agrees that all statements, testimony and tangible objects provided by the defendant (with the exception of statements made in open court during guilty plea proceedings), whether prior or subsequent to this agreement, can be used directly and indirectly in any and all criminal proceedings against the defendant; and

e.     the defendant agrees that any charges that were dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government.  Furthermore, the defendant agrees not to assert the statute of limitations as a defense to any criminal offense involving or related to the facts set forth in Section II of this plea agreement which is not time barred as of the date of this agreement.  This waiver shall be effective for a period of six months following the date upon which the Court's order declaring the agreement breached by the defendant becomes final.

31.     At the time of sentencing, the government will make the nature and extent of the defendant's compliance with this agreement known to the Court.  The government and the defendant will request that sentencing be adjourned until full satisfaction by the defendant of the terms of this agreement.   In the event the defendant is sentenced prior to the completion of the defendant's cooperation with the government, the government reserves the right to modify any recommendation to be made by the government at sentencing pursuant to Guidelines §5K1.1 and/or Title 18, United States Code, Section 3553(e).

PCampana\Tetrault\PleAgr.wpd

32.    The defendant's attorney is permitted to be present at any time the defendant is questioned or interviewed by government agents regarding the matters set forth in this agreement.

## VII.    FORFEITURE PROVISIONS

33.    As a condition of the plea, the defendant agrees to immediately forfeit to the United States all of the defendant's right, title and interest to any and all assets which are subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 984 which are in the possession and control of defendant or the defendant's nominees.    Those assets include:

    a.    The sum of $262,983.87 United States currency seized from Citizens Bank account number 7340123336 in the name of Interim Capital, LLC on October 27, 2006 by the Federal Bureau of Investigation.

    b.    The sum of $234,928.47 United States currency seized from Citizens Bank account number 4003255096 in the name of Ocean Trading Partners, LLC on October 27, 2006 by the Federal Bureau of Investigation.

    c.    The sum of $14,725.78 United States currency seized from Citizens Bank account number 4001311444 in the name of Diltet, Co. LLC on October 27, 2006 by the Federal Bureau of Investigation.

PCampana\Tetrault\PleAgr.wpd

34.  The defendant agrees not to contest the administrative
forfeiture proceeding regarding the assets referred to in the
preceding paragraph and agrees to the entry of a declaration or
order of forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 984.
The defendant further agrees that the said currency represents the
proceeds of the violation to which he is pleading guilty herein.
The defendant further understands that the aforementioned currency
will be forfeited pursuant to an administrative forfeiture and
agrees to waive any other rights he may have or possess to contest
the forfeiture of this currency in any administrative, judicial or
other proceeding.

35.  The defendant agrees to waive any claim or defense under
Rule 41(e) of the Federal Rules of Criminal Procedure and the
Eighth Amendment to the United States Constitution, including any
claim of excessive fine regarding the forfeiture of assets by the
United States, the State of New York or its subdivisions.

36.  The   defendant   agrees   that   forfeiture   of   the
aforementioned assets as set forth in this agreement shall not be
deemed an alteration of the defendant's sentence.  Forfeiture of
the defendant's assets shall not be treated as satisfaction of any

PCampana\Tetrault\PleAgr.wpd

fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture. However, the government acknowledges that certain individuals claiming an interest in the seized currency have filed petitions for remission with the Federal Bureau of Investigation pursuant to 28 C.F.R. § 9.3, and in the event the petitions are granted, the defendant may receive credit toward any final restitution judgment emanating out of any sentence in this criminal proceeding.

37.    The defendant waives all constitutional, legal and equitable defenses to the forfeiture of the above described property in any proceeding, including statutory time limits contained therein.    The defendant further waives any right to appeal or collaterally attack any matter in connection with the forfeiture of assets as provided in this agreement.

38.    If the defendant is allowed to withdraw the plea of guilty, or if this agreement is voided by the Court, it is expressly agreed and understood that the agreement for the forfeiture of property is binding upon the defendant and survives the voiding of this agreement.

PCampana\Tetrault\PleAgr.wpd

## VIII.   TOTAL AGREEMENT AND AFFIRMATIONS

39.    This  plea  agreement  represents  the  total  agreement
between  the  defendant  and  the  government.    There  are  no  promises
made  by  anyone  other  than  those  contained  in  this  agreement.    This
agreement  supersedes  any  other  prior  agreements,  written  or  oral,
entered  into  between  the  government  and  the  defendant.

TERRANCE  P.  FLYNN
United  States  Attorney
Western  District  of  New  York

BY:  _Paul J. Campana_____
PAUL  J.  CAMPANA
Assistant  U.  S.  Attorney

Dated:  _April 10_, 2007

-20-

PCampana\Tetrault\PleAgr.wpd


I have read this agreement, which consists of 21 pages.  I have had a full opportunity to discuss this agreement with my attorney.  I agree that it represents the total agreement reached between myself and the government.  No promises or representations have been made to me other than what is contained in this agreement.  I understand all of the consequences of my plea of guilty.  I fully agree with the contents of this agreement.  I am signing this agreement voluntarily and of my own free will.


_____
JAMES TETRAULT
Defendant

Dated: April 10, 2007


_____
K. MICHAEL SAWICKI
Attorney for the Defendant

Dated: April 10, 2007